ACCEPTED
15-25-00092-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
6/30/2025 3:45 PM
CHRISTOPHER A. PRINE
CLERK

**NO. 15-25-00092-CV**

_____

IN THE FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
6/30/2025 3:45:46 PM
CHRISTOPHER A. PRINE
Clerk

_____

BRIGHT HEALTH MANAGEMENT, INC.

V.

CANTILO & BENNETT, LLP, SPECIAL DEPUTY RECEIVER FOR BRIGHT
HEALTHCARE INSURANCE COMPANY OF TEXAS

*AND*

**NO. 15-25-00108-CV**

_____

IN THE FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS

_____

IN RE BRIGHT HEALTH MANAGEMENT, INC.

_____

RESPONSE TO EMERGENCY MOTION FOR STAY

_____

Cantilo & Bennett, LLP, Special Deputy Receiver for Bright Healthcare Insurance Company of Texas (the "SDR") files this response to the *Emergency Motion for a Stay* filed by Bright Health Management, Inc. ("BHM"). At issue in these parallel matters is an order rendered by a receivership court requiring BHM to turn over books and records of Bright Healthcare Insurance Company of Texas ("Bright Healthcare") to the SDR (the "Order"). 4CR1705-08; Ex.1. The stay motion

4896-7693-8321

ignores that fundamental nature of the Order and instead tries to characterize it as nothing more than a plain-vanilla discovery ruling that the Court should readily stay pending review. In fact, the Order has nothing to do with discovery but rather enforces statutory receivership functions that, the facts show, must proceed with urgency. Moreover, though the Order was signed May 6, 2025, it enforces a permanent injunction rendered by the receivership court in November 2023 that ordered turnover of the books and records. There has thus already been significant delay in providing the books and records to the SDR, and BHM has had plenty of time to gather those materials. The Court should deny the stay motion.

ARGUMENT

A.    <u>The Order enforces the SDR's statutory right—which is reflected in the receivership court's permanent injunction—to take control of Bright Healthcare's books and records.</u>

In November 2023, the Texas Department of Insurance ("TDI") filed an original petition to place Bright Healthcare into liquidation because it is insolvent. 1CR3. The receivership court granted TDI's petition and rendered an order that: (1) appointed the Commissioner of the TDI as Liquidator of Bright Healthcare pursuant to Tex. Ins. Code §443.151; (2) granted the Liquidator title to "all of Bright Healthcare's] property," and ordered that the Liquidator "is authorized to take control and possession of Defendant's property, wherever located, and remove all such property from Defendant's premises;" and (3) authorized appointment of the

2

SDR to perform the Liquidator's functions regarding Bright Healthcare. 2CR316-27 (the "Receivership Order").

Critical to these parallel actions, the Receivership Order included a permanent injunction applicable to BHM and other affiliates of Bright Healthcare. 2CR321-22. Under the permanent injunction, BHM was enjoined from "[d]oing anything to prevent the Liquidator or the Liquidator's designees from gaining access to, acquiring, examining, or investigating any of Defendant's property or any other property, books, documents, records, or other materials concerning Defendant's business, under whatever name they may be found." 2CR323. BHM was also ordered to "make available and disclose to the Liquidator or the Liquidator's designees the nature, amount, and location of Defendant's property, *and **promptly surrender** all such property to the Liquidator or the Liquidator's designees*." *Id*. (emphasis added).

BHM did not appeal the Receivership Order or its permanent injunction.[1]

---

[1] BHM filed a mandamus petition and a parallel interlocutory appeal seeking review of the Order. In its docketing statement in the interlocutory appeal, BHM stated that the basis for appellate jurisdiction is Tex. Civ. Prac. & Rem. Code § 51.014(a)(1), which is the provision authorizing an interlocutory appeal from an order that "appoints a receiver or trustee." But the Order does not appoint a receiver or trustee. The Receivership Order did that, and BHM did not appeal the Receivership Order or the permanent injunction included in the Receivership Order. That basis for interlocutory appellate jurisdiction is therefore inapplicable, and this Court lacks jurisdiction over the parallel interlocutory appeal. The Court should dismiss it or, at a minimum, require BHM to show cause why it should not be dismissed.

3

The same day it signed the Receivership Order, the receivership court signed an *Order of Reference to Master* designating Tom Collins as Special Master for the Bright Healthcare receivership. 2CR307. The Receivership Court explained that a Special Master is appointed in every receivership brought under Chapter 443 of the Insurance Code: "Insurance receiverships are inherently exceptional cases requiring expert review by the Receivership Court. Insurance Code Chapter 443 imposes a duty on the Receivership Court to direct and approve numerous complex actions during the delinquency proceeding. Therefore, to provide the requisite judicial supervision of this proceeding, the Court finds that it is necessary to appoint a master herein under Rule 171 of the Texas Rules of Civil Procedure." *Id*.

The Special Master described the SDR's first steps after the Receivership Order was signed: "One of the fundamentals of a receivership is that the receiver, here the SDR, suddenly charged with taking over a business has as one of its first orders of business the duty to take immediate possession of all the books and records of the company. For obvious reasons, this is an essential and critical first step." 3CR613. The SDR thus sought to take possession of the books and records of Bright Healthcare—as a fundamental first step—so that he could identify the assets and liabilities and perform the functions of liquidating Bright Healthcare.

BHM, which had performed management functions for Bright Healthcare and other affiliated entities before the receivership, had possession of the bulk of Bright

4896-7693-8321

Healthcare's books and records. Despite the mandates of the Receivership Order and its permanent injunction to "promptly" turn over Bright Healthcare's property, BHM doled out only bits and pieces of Bright Healthcare's books and records to the SDR based on what it thought the SDR might need. Because the lack of complete files makes it impossible for the SDR to perform his functions, he filed a motion to enforce the permanent injunction and asked the receivership court to order BHM to turn over all Bright Healthcare's books and records within 10 days, including "[a]ll books and records relating to all debts owed to [Bright Healthcare] by BHM affiliate, Neuehealth Partners Texas RBE, LLC." 3CR339. The books and records relating to Neuehealth are particularly urgent because Bright Healthcare has a $125 million receivable against Neuehealth—a major potential asset of the receivership estate—but the SDR has been unable to secure books and records relating to that receivable from BHM.

The SDR filed his motion to enforce in July 2024, more than six months after the Receivership Order and its permanent injunction first required BHM to "promptly" turn over the books and records to the SDR. 3CR339. The process seeking books and records from BHM has thus not been precipitous; indeed, it has been excessively delayed.

The Order granting the motion to enforce was the product of a lengthy and deliberative process. After the SDR filed the motion to enforce, there was an

5

evidentiary proceeding before the Special Master, who has significant experience handling statutory receivership proceedings. The Special Master held an evidentiary hearing in September 2024, 3RR, then issued a thoughtful and thorough Memorandum Report and Recommendation to the receivership court in January 2025. 3CR612-36 (the "Special Master Report"). The Special Master Report explained that BHM is obligated to "promptly" and "immediately" turn over the books and records to the SDR by provisions of the Texas Insurance Code, the terms of the Receivership Order and its permanent injunction, and a Management Services Agreement between BHM and Bright Healthcare (the "MSA").[2] 3CR618-25.

Under the MSA, BHM was required to keep "sufficient" books and records reflecting the "nature and details of the management services and financial transactions undertaken for" Bright Healthcare. MSA ¶¶5, 1.2, 1.4, 1.7. The MSA further provided that all such "books and records" are and shall remain the "property" of Bright Healthcare, and BHM shall maintain them in a "fiduciary capacity." MSA ¶5. The MSA also echoed the Receivership Order's timing mandate and requires that BHM "immediately" turn over Bright Healthcare's books and records in the event of a receivership:

---

[2] The MSA can be found at 3RR, SDR Ex.2.

4896-7693-8321

9.     Receivership, Etc.

    (a)     If Insurer is placed into Rehabilitation or Liquidation by the Texas Insurance Commissioner ("Commissioner") applicable Texas law, then:

    (i) all of the rights under this Agreement for management services for Insurer shall belong to the Commissioner; and

    (ii) all books and records developed or maintained under and related to this Agreement will immediately be made available to the receiver or Commissioner and must be turned over to th receiver or Commissioner immediately upon the receiver's or Commissioner's request.

MSA ¶9.

The Special Master Report reflects that he considered BHM's obligation to "promptly" and "immediately" turn over Bright Healthcare's books and records, the SDR's imminent need for the books and records, and the procedural complexities created by BHM's own management practices that failed to maintain separate records of its various affiliates. The Special Master Report acknowledged the technical challenges involved, but explained that *time is of the essence* in turning over Bright Healthcare's books and records to the SDR:

> This Estate now is over one year old. Claims are being filed. The Court has set a claims filing deadline of February 3, 2025. Precious time has been lost regarding turning over the required information. Time thus is of the essence for the categories of records described above to be turned over.

> The Special Master appreciates the very substantial time, effort, manpower and cost required for Bright Management to retrieve and sort the Estate's records and information from that of all its other subsidiary

7

4896-7693-8321

companies. . . . *Bright Management cannot be heard to complain that this ninety (90) day deadline is unrealistic, because that deadline far exceeds the "immediate" turnover that Bright Management promised, and that the Texas Insurance Code and Permanent Injunction contemplate.*

3CR632-35 (emphasis added).

After the Special Master Report, the receivership court held an additional hearing and considered the issue *de novo*. 2RR. The entire evidentiary record from the proceedings before the Special Master was admitted into evidence at the hearing before the receivership court. 3RR; 2RR8-9; 4CR1706. The receivership court adopted the recommendation of the Special Master Report and ordered BHM to turn over Bright Healthcare's books and records within 90 days and provide a status report every 20 days. 4CR1705. That deadline is 20 months after the Receivership Order first required BHM to turn over the books and records, thirteen months after the SDR filed his motion to enforce the Receivership Order and its permanent injunction, and eight months after the Special Master Report ordered that relief.

B.  Neither the permanent injunction in the Receivership Order nor the Order enforcing that permanent injunction are subject to the "scope" or "relevance" parameters that apply to discovery orders.

Throughout the stay motion, BHM seeks to characterize the Order as a discovery order, insisting that any obligation it has to turn over the books and records of Bright Healthcare be subject to relevance and proportionality limits. That is the

4896-7693-8321

fundamental premise of BHM's entire argument—that this Court should somehow limit which Bright Healthcare books and records it must turn over to the SDR.

That premise is false and conflicts with Texas law, the permanent injunction in the Receivership Order, and the MSA. The Receivership Order repeatedly references Bright Healthcare's "property." The books and records that are the subject of the Order fall squarely within the Texas Insurer Receivership Act's definition of "property of the insurer" and "property of the estate," which includes "*all records and data* that are otherwise the property of the insurer, in whatever form maintained, within the possession, custody, or control of a managing general agent, third-party administrator, management company, data processing company, accountant, attorney, affiliate, or other person." Tex. Ins. Code §443.004(a)(20)(C) (emphasis added). Moreover, multiple provisions of the Act obligate BHM to turn over *all of* Bright Healthcare's records to the SDR. *See, e.g.,* Tex. Ins. Code §§ 443.010(a)(2)(B) (requiring promptly making available to the SDR books, accounts, documents, or other records pertaining to the insurer); 443.017(a) (SDR may immediately take possession of all records of insurer and persons holding such records required to release them to SDR); 443.151(a) (liquidation order vests ownership of records in SDR); and 443.154(n) (SDR entitled to take possession of records). Reflecting those statutory mandates, the Receivership Order requires that

9

BHM turn over all of that property to the SDR. And through the MSA, BHM contractually promised to do the same.

*All of* Bright Healthcare's books and records—not just those that may be relevant to any particular matter or claim—are subject to statute, the MSA, and the permanent injunction's requirement that BHM turn them over to the SDR. Without *all of* the books and records, the SDR cannot do his fundamental work of marshalling assets of Bright Healthcare (including the substantial NeueHealth receivable), resolving liabilities, and liquidating the company.

## CONCLUSION

The Court should deny the stay motion because BHM is required to turn over *all of* Bright Healthcare's property to the SDR, and that property includes Bright Healthcare's books and records. The statutory, contractual, and injunctive mandates are not subject to limits of relevance or proportionality as a discovery order might be. Moreover, BHM has had close to two years to gather and sort those books and records. The Court should deny the stay motion, end the delay, and allow the SDR to move forward with his important work.

WHEREFORE, Cantilo & Bennett, LLP, Special Deputy Receiver for Bright Healthcare Insurance Company of Texas, respectfully prays that the Court deny BHM's stay motion in these parallel matters.

4896-7693-8321

Respectfully submitted,

By: _____

Jane Webre
State Bar No. 21050060
Email: jwebre@scottdoug.com
Scott Douglass & McConnico LLP
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399

Gregory A. Pierce
State Bar No. 15994250
P.O. Box 40
Austin, Texas 78767
Tel: (512) 474-2154
gpierce@gpiercelaw.com

Attorneys for Appellee/Real Party in Interest
Cantilo & Bennett, L.L.P., Special Deputy Receiver
of Bright Healthcare Insurance Company of Texas

CERTIFICATE OF SERVICE

I certify that this pleading was served on all counsel of record through the electronic filing system on June 30, 2025.

Jane Webre

11

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Michaelle Peters on behalf of Jane Webre
Bar No. 21050060
mpeters@scottdoug.com
Envelope ID: 102603699
Filing Code Description: Response
Filing Description: Response to Emergency Motion for Stay
Status as of 6/30/2025 3:54 PM CST

Associated Case Party: Cantilo & Bennett, LLP as Special Deputy Receiver for Bright Health Insurance Company of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Michaelle Peters | | mpeters@scottdoug.com | 6/30/2025 3:45:46 PM | SENT |
| Jane Webre | | jwebre@scottdoug.com | 6/30/2025 3:45:46 PM | SENT |
| Abril Rivera | | arivera@scottdoug.com | 6/30/2025 3:45:46 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Christopher Fuller | 7515500 | cfuller@fullerlaw.org | 6/30/2025 3:45:46 PM | SENT |
| Gregory Pierce | 15994250 | gpierce@gpiercelaw.com | 6/30/2025 3:45:46 PM | SENT |
| Patricia Muniz | | pmuniz@inquestresources.com | 6/30/2025 3:45:46 PM | SENT |
| Brian Falligant | | bfalligant@inquestresources.com | 6/30/2025 3:45:46 PM | SENT |
| Rachael Padgett | | rpadgett@maynardnexsen.com | 6/30/2025 3:45:46 PM | SENT |
| Lauren Feldott | | lfeldott@maynardnexsen.com | 6/30/2025 3:45:46 PM | SENT |
| Lisa Alcantar | | lalcantar@maynardnexsen.com | 6/30/2025 3:45:46 PM | SENT |
| Carlos R.Soltero | | CSoltero@MaynardNexsen.com | 6/30/2025 3:45:46 PM | SENT |
| Max Mendel | | mmendel@maynardnexsen.com | 6/30/2025 3:45:46 PM | SENT |
| Brytne Kitchin | | bkitchin@maynardnexsen.com | 6/30/2025 3:45:46 PM | SENT |